485 So.2d 288 (1986)
Marguerite Stewart SHOWS, et al.
v.
Willie S. WATKINS, et al.
No. 55222.
Supreme Court of Mississippi.
March 5, 1986.
James C. Pittman, Jr., Gray, Montague & Pittman, Hattiesburg, for appellants.
J.B. Van Slyke, Jr., Hattiesburg, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
A boundary line dispute gives rise to this appeal from the Chancery Court of Perry County. Appellants, the widow and surviving children of Roland Shows, claim the deceased, their predecessor in title, obtained title to property south of a borderline fence by adverse possession and that the disputed property became part of his homestead. The appellees, Willie S. Watkins, Ruby C. Watkins, and Standard Gravel Company, Inc. claim the property in dispute was conveyed to their predecessor in title through a quitclaim deed dated June 13, 1980. Appellants sought, in the trial *289 court, to have the quitclaim deed invalidated because the property conveyed was claimed to be homestead and the deed was not joined by the grantor's spouse, Marguerite Shows. From an adverse ruling the appellants perfect this appeal and divide their argument into two parts:
(1) Plaintiffs' predecessor in title, Roland Shows, acquired title to the disputed tract by adverse possession.
(2) The disputed tract was part of the homestead of Roland Shows and Marguerite Shows; thus the quitclaim deed from Roland Shows to James P. Garner and Mary Evelyn Garner was void as to the disputed tract.
This Court reverses the judgment in part, but affirms in part and remands for the addition of all parties needed for a just determination of the homestead issue.

I.

Did Roland Shows acquire title to the disputed tract of land by adverse possession?
Miss. Code Ann. § 15-1-13 (1972) states:
Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten years after the removal of such disability, as provided in section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than 31 years.
Furthermore, the recent case of Trotter v. Gaddis & McLaurin Inc., 452 So.2d 453 (Miss. 1984) reflects the Mississippi case law in explaining:
There are six essential elements necessary to constitute an effective adverse possession claim. There must be possession which is (1) and under claim of right, (2) actual, (3) open, notorious, and visible, (4) exclusive, (5) continuous and uninterrupted for ten years, and (6) peaceful.
Trotter, 452 So.2d at 456.
Appellants introduced ten witnesses who testified regarding Roland Shows' total dominion and control over the disputed property for a period of twenty years. In addition, it was stipulated among the parties that eight additional witnesses could have testified concerning Roland Shows' control of the property and that the northern boundary line of his property was known to be the fence.
Included in the testimony concerning Roland Shows' control of the property was testimony that Mr. Shows' entire homeplace, consisting of approximately 40 acres and including the disputed four acre tract, was completely enclosed by a fence. There was also testimony that Roland Shows made use of the disputed land in the following ways: He cleared the land, trees and bushes, cut paperwood, kept hogs and cattle, planted assorted vegetables, hunted, fished, gave others permission to hunt and fish, entered into a gravel lease, and stocked the gravel pit pond with catfish.
As a supporting argument, the appellants contend that "it was the intent of all parties to the various conveyances that Roland Shows have title to the disputed tract south of the boundary line fence." That contention was proved with the testimony of J.B. Shows and Mr. and Mrs. Garner.
Appellees add very little to the analysis of whether there was adverse possession. Appellees simply rely on the contention that the execution of the quitclaim deed from Roland Shows to Mr. and Mrs. Garner defeated all adverse possession. Appellees derive this argument from the holding of the chancellor in the trial court. On the topic of adverse possession, the chancellor stated:
Failure of the Plaintiffs to establish by clear and convincing evidence an intent on the part of Roland Show [sic] contrary to the express provisions of the quitclaim to the Garners leaves that quitclaim *290 standing according to its terms, and that fact alone resolves the Plaintiffs' claim of adverse possession against them.
The record clearly and undisputedly reflects that Roland Shows met all the criteria of § 15-1-13 and all the criteria in the recent Mississippi case law. The language of the chancellor, quoted above, indicates that he did not reach the merits of the appellants' claim of adverse possession. Conversely, this Court, having considered the merits of the claim, holds that no other conclusion could be reached on this record but that Roland Shows obtained title to the disputed four acre tract by adverse possession of the tract for more than the required statutory period.

II.

Was the disputed four acre tract part of the homestead of Roland and Marguerite Shows?
The chancellor, in his final judgment, held that the plaintiffs failed to show by clear and convincing evidence an intent on the part of Roland Shows contrary to that expressed by the quitclaim deed itself. The chancellor also held:
Additionally, plaintiffs seek cancellation of an instrument to which the Garners are party, and the Garners are not before the Court as parties to this cause; and the Court is of the opinion that the Garners are necessary and indispensable parties to a suit which seeks to cancel a deed to them.
This case is controlled by the Mississippi Rules of Civil Procedure, Rule 19,[1] which states in part:
(a) Persons to Be Joined if Feasible. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:
(1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.
The federal counterpart to Rule 19 has well defined contours. See Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); 3A Moore's Federal Practice (2d Ed. 1984) §§ 19.07-1, et seq., pages 19-120, et seq.; Wright & Miller, Federal Practice and Procedure (1972) §§ 1601, et seq. Because it is substantially the same as MRCP Rule 19, this Court looks to Federal Rule 19 and the construction it has been given as guidance for the shaping of our rule. See Stanton & Associates v. Bryant Const. Co., 464 So.2d 499 (Miss. 1985), Bourn v. Tomlinson Interest, 456 So.2d 747, 749 (Miss. 1984).
This Court affirms the chancellor and holds that the Garners, who resided in Richton, Mississippi and were subject to the jurisdiction of the Chancery Court of Perry County, should have been joined as parties to this suit under Rule 19(a)(2)(i). Furthermore, joinder of the Garners should have been preliminary to any adjudication made on the merits of the plaintiffs' homestead claim. Likewise, it is prejudicial to the Shows' position to finally adjudicate adversely to their position based upon a non-joinder of parties rather than on the merits of their claim. This Court must reverse the chancellor's finding that the plaintiffs failed to show by clear and convincing evidence an intent of Shows contrary *291 to the express intent of the quitclaim deed for the reason that it is against equitable principles. This case is one in which both the Shows and the Garners have an interest in the matter in controversy that cannot be determined without either affecting that interest or leaving the interest of those before the Court in a situation inconsistent with equitable principles.
This Court, therefore, reverses the chancellor on his finding that plaintiffs failed to show by clear and convincing evidence an intent of Shows contrary to that which was expressed by his quitclaim deed. An adjudication that the property was homestead property and that the Shows-Garner quitclaim deed was invalid would certainly have impeded the Garners' ability to defend certain covenants made in their general warranty deed by which they purported to convey the disputed property to Mr. and Mrs. Watkins. See Howard v. Clanton, 481 So.2d 272 (Miss. 1985).
We therefore reverse in part the chancellor's judgment on the merits of the homestead claim as premature, but affirm his finding that the Garners should have been parties and remand for retrial with instructions to join Mr. and Mrs. Garner to this suit under Rule 19 as persons needed for just adjudication of the homestead question.

III.
In addition, since the issue of homestead rights are involved on the retrial of this case, the Court makes note of several aspects of the law of homestead property. The term homestead signifies "the dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose." 40 Am.Jur.2d Homestead § 1 (1968).
One method of determining homestead is through a homestead declaration made in accordance with Miss. Code Ann. § 85-3-25 (1972) which reads in part, "Any citizen entitled to a homestead and desiring to select the same and obtain the advantages of such selection, may make a declaration thereof ..." [emphasis added].
It appears from the language of § 85-3-25 that a homestead declaration is voluntary and not obligatory. This Court held in Ritter v. Whitesides, 179 Miss. 706, 176 So. 728 (1937), "While a declaration as to homestead and its recordation are not required in all cases, it is a convenient form of giving notice of the purpose to return, although the parties may not be actually residing thereon."
Absent a declaration of homestead, an intent to use property as homestead must be present. "To acquire a homestead there must be an intent to make the premises a homestead... ." 40 C.J.S. Homesteads § 30 (1944).
In jurisdictions where no declaration is required:
When a debtor occupies such a status as entitles him to a homestead, his mere ownership of the land and occupancy of it may be sufficient to impress it with the character of a homestead, especially when the property is within the extent and value limited by law for a homestead.
40 C.J.S. Homesteads § 44 (1944).
Very little Mississippi case law was found defining exactly how homestead is determined. One case did, however, hold that when determining whether a non-contiguous tract should be allowed as homestead, "the controlling factor is whether or not the property is being devoted to homestead purposes and uses consistent with the purpose and use to which his home tract is devoted." Horton v. Horton, 210 Miss. 116, 48 So.2d 850, 855 (1950). It can be gleaned from the holding in Horton that an important factor in determining homestead is the purpose and the use the property is put to.
Some confusion may arise as to whether a party may gain homestead rights in property in which he has no record title, but has title by adverse possession. "Where title to property has been acquired by adverse *292 possession, the owner is entitled to a homestead in the property the same as though title had been acquired by deed... ." 40 C.J.S. Homesteads § 789(d) (1944).
Confusion may also arise as to whether property under a commercial lease may be claimed as homestead. No Mississippi cases were found directly on point with this issue. However, 40 C.J.S. Homestead § 36 (1944) states:
Consideration is often given by the authorities to the comparative extent to which the property is used for residence and business purposes, these authorities holding that, in determining the homestead character of property, it is the principal use to which the property is subjected that must be looked to, and that any use of the property for business purposes should be of an incidental character, so that, while the homestead character attaches to property occupied mainly as a residence and only incidentally for business purposes, no exemption will be allowed as to property used primarily and chiefly for commercial purposes, and only incidentally as the place of residence of the debtor and his family.
A similar Texas case involved a sand and gravel lease on a two and one-half acre tract claimed as homestead by a widower. The Court of Civil Appeals of Texas held:
By execution of deed to the sand and gravel on the two and one-half acre tract, appellant did not waive or abandon his homestead right in the whole of said property. Sand and gravel in place are in the nature of a mineral substance such as coal, iron, gas and oil, and should receive a like classification. It has been repeatedly held in this state that the execution of an oil and gas lease does not operate as an abandonment of the homestead right of the lessor, since the transaction is entirely consistent with the homestead use.
Cline v. Henry, 239 S.W.2d 205 (Tex.Civ. App. 1951).
This Court believes that income producing property under a sand and gravel lease does not ipso facto make the property ineligible to be homestead.
Having made those observations, the Court reverses with instructions to join the Garners under Rule 19.
ISSUE OF ADVERSE POSSESSION RENDERED; AFFIRMANCE OF HOLDING THAT GARNERS WERE PARTIES NEEDED FOR A JUST ADJUDICATION OF HOMESTEAD ISSUE, AND CAUSE REMANDED FOR A RULE 19 JOINDER OF PARTIES NEEDED FOR JUST ADJUDICATION AND TRIAL ON HOMESTEAD ISSUE.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The Court notes Rule 19 abandons the terms "necessary" and "proper" and adopts the verbiage "Persons Needed for Just Adjudication."